STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

**April 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **A.M.-1**

**No. 20-0920** (Kanawha County 20-JA-81)

## MEMORANDUM DECISION

Petitioner Father A.M.-2, by counsel Edward L. Bullman, appeals the Circuit Court of Kanawha County's October 8, 2020, order terminating his parental rights to A.M.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Katherine A. Campbell, filed a response in support of the circuit court's order. The guardian ad litem, Jennifer N. Taylor, filed a response on the child's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating him for neglect and terminating his parental rights for abandonment based upon his incarceration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2020, the DHHR filed a child abuse and neglect petition alleging that petitioner had failed to provide the child with the necessary food, clothing, supervision, and housing and that his parental rights to an older child had been previously terminated. The DHHR further alleged that petitioner had failed to provide the child with any financial or material support. According to the DHHR, A.M.-1's grandmother was granted legal guardianship during a family court proceeding in 2019 due to petitioner's incarceration and the mother's substance abuse. Since the grandmother had been granted legal guardianship, the DHHR learned that she had "placed [A.M.-1]" with another family, and the child was residing in that home six days of the week.

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, as the child and petitioner share the same initials, we refer to them as A.M.-1 and A.M.-2, respectively, throughout this memorandum decision.

However, the grandmother continued to have access to the child's WIC benefits[2] and guardianship stipend. The DHHR alleged that the grandmother had misrepresented her relationship with A.M.-1 and included her as an adult respondent.

On February 21, 2020, the circuit court held a preliminary hearing, at which time the grandmother voluntarily relinquished her guardianship rights to the child. Petitioner appeared in person and by counsel. He testified that he was incarcerated for a felony charge of failure to pay child support and that his sentence would be discharged in mid-March of 2020. The circuit court ordered petitioner to notify the DHHR upon his release and then begin random drug screening.

The circuit court held an adjudicatory hearing in July of 2020. The DHHR presented testimony that the parents' history of substance abuse, as well as petitioner's incarceration, led to the grandmother's legal guardianship prior to these proceedings. A DHHR worker testified that the parents had a prior termination of their parental rights to an older child, which occurred in 2017. The DHHR worker further testified that petitioner had not contacted the DHHR since he was released from incarceration. As a result, he had not participated in any drug screens. The DHHR worker testified that she had contacted petitioner, by way of his mother, on one occasion to obtain permission for the child to go out of state. Petitioner denied that his parental rights to another child had ever been involuntarily terminated and stated that he was not the father of the child involved in the 2017 proceedings as the DHHR alleged. He admitted, however, that he had relinquished his parental rights to three other children. Petitioner testified that he had provided care for A.M.-1 until he was incarcerated in July of 2018 for failure to pay child support for his other children, at which point A.M.-1 was about eight months old. Petitioner admitted that he had no means to support A.M.-1 and had not provided support for the child since July of 2018. However, petitioner asserted that he called A.M.-1 every day while incarcerated.

Ultimately, the circuit court found that the DHHR presented credible testimony that petitioner was incarcerated as a result of his failure to pay child support. The court found that "[u]pon his release from prison on March 21, 2020, [petitioner] failed to contact the [DHHR] case[]workers; failed to pay child support for the infant [A.M.-1;] failed to participate in any programs or services offered by the [DHHR]; and [was admittedly] homeless." The circuit court found that petitioner's actions had "adversely affected [his] ability to parent" the child. Further, as a result of petitioner's actions, the circuit court found that A.M.-1 was "harmed or threatened by the refusal, failure or inability of [petitioner] to supply her with necessary food, clothing, shelter, supervision, medical care or education" and that failure "was not due primarily to a lack of financial means on the part of said parent." Accordingly, the circuit court adjudicated A.M.-1 as a neglected child and petitioner as an abusing parent.

The circuit court held the dispositional hearing in September of 2020. Petitioner failed to appear but was represented by counsel. The DHHR presented evidence that petitioner had not contacted the DHHR since the adjudicatory hearing, failed to participate in any services with the DHHR, and failed to provide any support for the child. Petitioner presented no evidence. The

---

[2]"WIC" refers to The Special Supplemental Nutrition Program for Women, Infants, and Children.

circuit court concluded that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future as he had demonstrated an inadequate capacity to solve the problems of child abuse and neglect on his own or with assistance. Finally, the circuit court found that it was necessary for the welfare of the child to terminate petitioner's parental rights. Accordingly, the circuit court terminated petitioner's parental rights by its October 8, 2020, order. Petitioner now appeals this order.[3]

This Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in adjudicating him as *abandoning* the child. He argues that his testimony, setting forth his attempts to remain in contact with the child while incarcerated, proved that his conduct did not demonstrate the settled purpose to forego duties and parental responsibilities to the child. *See* W. Va. Code § 49-1-201 (definition of abandonment). Petitioner argues that "[g]iven the circumstances, he was doing what he was able to provide for his child and should not have been adjudicated a neglecting parent for abandoning his child." However, there is a critical flaw to petitioner's argument. The circuit court did not adjudicate petitioner based on his abandonment of the child.

Indeed, a thorough review the circuit court's adjudicatory order in the record reveals no mention of findings related to abandonment. Rather, the circuit court found that petitioner had failed to support the child and that his actions of failing to pay child support for his other children had led to his inability to care for A.M.-1. Further, as a result of petitioner's actions, the circuit court found that A.M.-1 was "harmed or threatened by the refusal, failure or inability of [petitioner] to supply her with necessary food, clothing, shelter, supervision, medical care or education" and that failure "was not due primarily to a lack of financial means on the part of said parent." As mentioned, the circuit court's findings do not reference abandonment. Clearly, petitioner is not entitled to relief on this ground. Additionally, petitioner argues that the circuit court could not have found that he neglected the child because the conditions of neglect were due primarily to his

---

[3]The mother's parental rights were also terminated below. According to the parties, the permanency plan for A.M.-1 is adoption in her current placement.

financial means. However, petitioner cites to no evidence to contradict the circuit court's finding that the conditions were not due primarily to his financial means. Based upon our review of the record, we find that the circuit court's adjudicatory findings are not clearly erroneous and that petitioner is entitled to no relief.

Petitioner also argues that the circuit court erred in basing the termination of his parental rights on his incarceration. He cites this Court's holding of *Cecil T.* that sets forth the factors to be considered when incarceration is the sole factor raised at the dispositional hearing. *See Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 3. Yet, petitioner was not incarcerated at the time of the dispositional hearing, and, as such, his incarceration was not the sole factor (or even a factor) in the circuit court's final determination.

On appeal, petitioner wholly ignores the findings of fact required for a circuit court to terminate a parent's parental rights. West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the welfare of the child. West Virginia Code § 49-4-604(d) sets forth that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future when the parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Notably, the West Virginia Code provides that those conditions exist when "the abusing parent or parents have willfully refused or are presently unwilling to cooperate in the development of a reasonable family case plan." W. Va. Code § 49-4-604(d)(2).

Here, the circuit court properly found that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect or abuse in the near future because he failed to cooperate with the DHHR following his adjudication as an abusing parent. Contrary to petitioner's argument, the circuit court based this finding on evidence that petitioner had not contacted the DHHR since the adjudicatory hearing, failed to participate in any services with the DHHR, and failed to provide any support for the child following his release from incarceration. As noted, while petitioner's incarceration was a concern when the petition was filed, his complete lack of involvement with these proceedings was the deciding evidence at the dispositional hearing. This evidence fully supports the circuit court's finding, and, therefore, we find no error in the termination of petitioner's parental rights. As we have previously held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because the requisite findings are fully supported by the record on appeal, we find no error in the circuit court's disposition.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 8, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: April 20, 2021


**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton